**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LUIS A. TORRES, SR.,**
**as the administrator of the Estate of**
**Luis A. Torres, Jr.,**

                          **Plaintiff,**

     **vs.**                                                            **6:11-cv-01229**
                                                                          **(MAD/DEP)**

**MICHAEL AMATO; JEFFREY SMITH;**
**COUNTY OF MONTGOMERY; MICHAEL**
**FRANCO; TERRY A. CARTER; and PAUL A.**
**DAW,**

                          **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**LAW OFFICES OF ELMER**                  **ELMER R. KEACH, III, ESQ.**
**ROBERT KEACH, III, PC**
One Pine West Plaza - Suite 109
Albany, New York 12205
Attorney for Plaintiff

**LAW OFFICE OF THERESA**                 **MURRY S. BROWER, ESQ.**
**J. PULEO**
P.O. Box 12699
Albany, New York 12212
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On October 12, 2011, Luis A. Torres, Sr., as administrator of the estate of Luis A. Torres,

Jr. (hereinafter "Plaintiff"), commenced this civil rights suit, alleging that Defendants were

deliberately indifferent to Plaintiff's health and safety, pursuant to the Eighth and Fourteenth Amendments of the United States Constitution. *See* Dkt. No. 1. Plaintiff also alleges claims for negligence, gross negligence, and wrongful death pursuant to New York State law. *See id.*

Currently pending before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 47.

## II. BACKGROUND[1]

On the morning of October 13, 2010, Plaintiff was transported to the Amsterdam City Court for a court appearance. Plaintiff was transported to this appearance by Defendants Carter and Daw in a van operated by the Montgomery County Sheriff's Department.

After the court proceedings were over, the inmates were escorted to the corrections van. Plaintiff was not placed in a seat belt by either Defendant Daw or Defendant Carter. *See* Dkt. No. 58 at ¶ 2. The van was driven to the Montgomery County Correctional Facility by Defendant Carter. *See id.* at ¶ 3. As the van neared the Montgomery County Public Safety Building, Defendant Carter executed a left turn, at which point Plaintiff exited the vehicle. Upon exiting the vehicle, Plaintiff sustained fatal injuries to his head and died shortly thereafter.

Defendants contend that a "[w]itness to the speed of the vehicle as it turned indicate that the speed of the vehicle was between 10 to 20 mph when the turn began. None of the witnesses said it was an unsafe rate of speed." Dkt. No. 47 at ¶ 4 (citations omitted). Plaintiff, however, denies this allegation, and contend that "Defendants are well-aware that Ramon Valentin, an inmate in the van on October 13, 2010, testified that the van was being driven at an unsafe rate of

---

[1] Unless otherwise noted, the facts set forth in the "Background" section of this Memorandum-Decision and Order are not in dispute.

speed at the time of the accident, and that the left turn in question, from Route 4S onto Clark Drive in the Village of Fultonville, was also taken at an unsafe rate of speed." Dkt. No. 58 at ¶ 4 (citing Valentin Dep., p. 7:4-6, 7:10-15, 53:16-22, 84:15-17).

Defendant Carter testified that he locked the side door to the van after the inmates were loaded and checked to make sure that the door was locked and closed. *See* Dkt. No. 47 at ¶ 6 (citing Deposition of Terry Carter at Pages 35-36, 41). Moreover, Defendant Daw testified that he also checked the door to make sure that it was locked and closed securely before leaving the Amsterdam Police Court. *See id.* at ¶ 7 (citing Deposition of Paul Daw at 36, 53-54). Although Plaintiff admits that Defendants Carter and Daw testified that they performed these tasks, Plaintiff contends that Defendants Carter and Daw failed to lock the door or ensure that it was closed securely. *See* Dkt. No. 58 at ¶¶ 6-7 (citation omitted). Mr. Valentin testified that Defendant Carter did not lock the door with a key, but rather "'just threw the door for it to lock[.]'" *Id.* (quoting Valentin Dep., p. 22:11-13, 25:3-9). Further, Plaintiff contends that his expert "has opined that the door was either improperly latched at the time of the accident, or had a defective latching mechanism." *Id.* (citing Exhibit "L").

Additionally, Defendants contend that "inmates could take seatbelts off themselves even if seat belted because their hands were free and there was slack in the waist chain." Dkt. No. 47 at ¶ 8 (citations omitted). Plaintiff denies this allegation, and asserts that "Ramon Valentin testified that detainees are restrictively confined in handcuffs and ankle shackles, with chains being fed through a 'black box' that severely limits movement." Dkt. No. 58 at ¶ 8 (citing Valentin Dep., p. 30:3-15). Further, Plaintiff contends that Defendant "Carter also admitted that inmates could not properly utilize seat belts without the assistance of a Corrections Officer." *Id.* (citing Carter Deposition, p. 17:3-10).

Moreover, Defendants contend that Defendants Carter and Daw "were aware of the written policy of the Sheriff that required seat belting of inmates while being transported." Dkt. No. 47 at ¶ 9 (citing Deposition of Paul Daw at 14, 101-02; Deposition of Terry Carter at 16). Plaintiff, however, contends that Defendant Daw testified that there were two written policies, "and one of them (of which he was familiar) did not require that inmates being transported be placed in seat belts." Dkt. No. 58 at ¶ 9 (citing Daw Dep., p. 17:5-11). Plaintiff asserts that Defendant Daw provided this policy to the Sheriff, and that the policy was later amended to require that inmates be seat belted. *Id.* (citing Exhibits "P" and "T").

According to Defendants, they did not place seatbelts on the inmates for personal safety reasons. *See* Dkt. No. 47 at ¶ 10 (citations omitted). Plaintiff, however, contends that there were ways available at the time of this incident that would have permitted corrections officers to safely assist the inmates in fastening the safety belts, but that they did not employ these methods until shortly after Plaintiff's death. *See* Dkt. No. 58 at ¶ 10 (citing Valentin Dep., p. 33:20-34:5). Further, Plaintiff claims that, contrary to Defendants' assertion, inmates were not able to fasten seatbelts for themselves. *See id.* at ¶ 11 (citing Carter Dep., p. 17:3-10).

Defendants further contend that, after the incident, the door locks on the van were disabled. *See* Dkt. No. 47 at ¶ 12. Plaintiff, however, denies this allegation and contends that the door in question was not preserved after this incident, despite the "immediate requests of Plaintiff and obvious likelihood of litigation[.]" Dkt. No. 58 at ¶ 12 (citing Exhibit "M"). Further, for the same reasons, Plaintiff denies Defendants' statement that "[t]he locks were not disabled before October 13, 2010 although usually done by the dealer it was not checked by the Sheriff or Under Sheriff." Dkt. No. 47 at ¶ 13 (citations omitted); Dkt. No. 58 at ¶ 13 (citations omitted). Plaintiff claims that the Sheriff's investigation did not include inspecting the child locks on the transport

van and that it is the opinion of Plaintiff's expert "that the latching mechanism on the van was defective, especially given that there are parts on the van associated with the door latches that appear to have been changed subsequent to purchase of the van." Dkt. No. 58 at ¶ 13 (citations omitted).

In their motion for summary judgment, Defendants first argue that Plaintiff has failed to establish a violation of his Fourteenth Amendment rights through Defendants' failure to restrain him with a seatbelt. *See* Dkt. No. 47 at 9-15.[2] Defendants contend that, at the time of this accident, the other district courts in the Second Circuit had concluded that there was no violation of a civil right when inmates seated in the rear of a transport vehicle were not placed in or supplied with seatbelts. *See id.* at 10. Next, Defendants assert that Plaintiff has failed to establish *Monell* liability against the County or its policy makers. *See id.* at 10, 14. Further, Defendants contend that Plaintiff has failed to establish that Defendants Amato, Smith and Franco were personally involved with any of the alleged unconstitutional conduct. *See id.* at 14. Finally, Defendants argue that they are entitled to qualified immunity. *See id.* at 15-17. Specifically, Defendants contend that it was not clearly established law in 2010 that failing to place Plaintiff in a seatbelt would violate his constitutional rights secured by the Eighth or Fourteenth Amendments. *See id.*

## III. DISCUSSION

**A.      Standard of review**

---

[2] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.      Deliberate indifference under the Fourteenth Amendment[3]**

---

[3] Although the parties contend that Plaintiff's Eighth Amendment rights were violated, since Plaintiff was a pretrial detainee, his claim must be analyzed under the Due Process Clause of the Fourteenth Amendment. *See, e.g., Toliver v. City of New York*, 530 Fed. Appx. 90, 92 n.1

(continued...)

"The Eighth Amendment's prohibition against cruel and unusual punishment requires prison conditions to be 'humane,' though not necessarily 'comfortable.'" *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citing *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)) (other citations omitted); *see also* U.S. Const. amend. VIII. To establish an Eighth Amendment violation, an inmate must show: "'(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities[;] and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety.'" *Id.* (quoting *Gaston*, 249 F.3d at 164) (other citation omitted).

"As to the objective element, there is no 'static test' to determine whether a deprivation is sufficiently serious; '[t]he conditions themselves must be evaluated in light of contemporary standards of decency.'" *Jabbar*, 683 F.3d at 57 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)) (other citation omitted). The Second Circuit has held that "prisoners may not be deprived of their 'basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety' — and they may not be exposed 'to conditions that pose an unreasonable risk of serious damage to [their] future health.'" *Id.* (quotations omitted).

As for the subjective requirement, deliberate indifference requires "'more than mere negligence.'" *Id.* (quoting *Farmer*, 511 U.S. at 835, 114 S. Ct. 1970). The prison official must know of, and disregard, an excessive risk to inmate health or safety. *See id.* (citation omitted).

---

[3](...continued)
(2d Cir. 2013) (citations omitted); *see also* Dkt. No. 1 at ¶ 24 (indicating that Plaintiff was a pretrial detainee at the time of his death and citing to the Eighth and Fourteenth Amendments). However, such a distinction is of no moment for purposes of this Memorandum-Decision and Order given that "the standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 70-71 (2d Cir. 2009) (citation omitted).

"'[A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . [cannot] be condemned as the infliction of punishment.'" *Id.* (quotation omitted).

To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property. *See Jabbar*, 683 F.3d at 57 (citing *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)) (other citation omitted). Merely negligent conduct does not give rise to claims under the Fourteenth Amendment. *See id.* (citing *Daniels*, 474 U.S. at 331, 333, 106 S. Ct. 662).

In *Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012) (per curiam), the plaintiff, a state-prison inmate, alleged that the defendants, various state prison officials, "violated his constitutional rights under the Eighth and Fourteenth Amendments by transporting him on a bus without a seatbelt." *Id.* at 56. The court summarized the plaintiff's allegations as follows:

> [The plaintiff] was transported to and from a medical appointment at an outside facility . . . on [a] . . . bus that did not have seatbelts for inmate passengers. . . . During transport, [the plaintiff] was shackled from his wrists to his ankles. The bus made a forceful turn and [the plaintiff], who had fallen asleep, was thrown from his seat. He hit his head on another seat and was knocked unconscious. He sustained injuries to his face, head, and back.

*Id.* (internal quotation marks omitted).

The court began its analysis by noting that it had "not yet addressed whether the Eighth or Fourteenth Amendments are violated when a prison official does not provide a bus seatbelt to a prison inmate in transport," but that "[o]ther courts," including the Eighth, Eleventh, Fifth, and Tenth Circuits, as well as "[n]umerous district courts," have "held that the failure to provide an inmate with a seatbelt does not, standing alone, give rise to a constitutional claim." *Id.* at 57-58.

After describing the cases in which those courts had so held, the Second Circuit joined them, finding that the plaintiff's claim failed both prongs of the deliberate-indifference standard:

> First, as for the Eighth Amendment's objective requirement, the failure to provide a seatbelt is not, in itself, sufficiently serious to constitute an Eighth Amendment violation. A bus seatbelt is not a life necessity. While seatbelts may offer reasonable safety for the general public, on a prison bus their presence could present safety and security concerns. Inmates, even handcuffed or otherwise restrained, could use seatbelts as weapons to harm officers, other passengers, or themselves. A correctional facility's use of vehicles without seatbelts to transport inmates, when based on legitimate penological concerns rather than an intent to punish, is reasonable.
>
> Second, as for the Eighth Amendment's subjective requirement, because the absence of seatbelts on inmate bus transport is itself not an excessive risk, without more, deliberate indifference — that is, that defendants knew of, and disregarded, an excessive risk to inmate safety — cannot be plausibly alleged.
>
> Third, for the reasons stated above, under the Fourteenth Amendment, failure to provide an inmate with a seatbelt does not constitute a deprivation of life, liberty, or property.

*Id.* at 58-59 (citations, internal quotation marks, and some alterations omitted).

After setting forth the above principles, the Second Circuit held that the plaintiff "did not allege that there was any intent to punish or other improper motivation for the lack of inmate seatbelts on the . . . bus, and we cannot reasonably infer such intent. [The plaintiff] did not allege that defendants knew of any excessive risk to inmate safety. . . . Thus, without more, the complaint failed to allege sufficient facts to state a plausible claim." *Id.*

In *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013), the plaintiff alleged that he was seriously injured when a prison van in which he was riding stopped abruptly. *See id.* at 405. The district court dismissed Plaintiff's complaint *sua sponte* at the initial screening, finding that the plaintiff failed to allege a plausible claim that the driver of the van acted with deliberate

indifference to his safety. *See id.* at 408. The plaintiff alleged that he was not provided with a seatbelt and that he could not protect himself when the prison van stopped abruptly because he was shackled in leg irons and handcuffs. *See id.* The plaintiff also alleged that the driver of the van knew that other prisoners had been injured when the prison van in which they were riding stopped abruptly. *See id.* The plaintiff further alleged that, notwithstanding that knowledge, the driver of the van drove the van recklessly and that he sustained serious injuries when the driver had to brake suddenly to avoid hitting another vehicle. *See id.*

On appeal, the Fifth Circuit found that the district court erred in dismissing the plaintiff's Eighth Amendment claims. *See id.* Distinguishing the outcome in *Jabbar*, the Fifth Circuit found that this case involved the additional allegation "that the prisoner was injured when the defendant operated the prison vehicle recklessly knowing of the danger to the prisoner." *Id.* at 409; *see also Brown v. Fortner*, 518 F.3d 552, 560 (8th Cir. 2008) (holding that evidence of the defendant's refusal to secure the plaintiff's seatbelt combined with the defendant's reckless driving was sufficient for a jury to "conclude that there was a substantial risk of harm to [the plaintiff] and that [the defendant] knew of and disregarded the substantial risk [of] harm"); *Wilbert v. Quarterman*, 647 F. Supp. 2d 760, 769 (S.D. Tex. 2009) ("Considering the different circuit court opinions, it appears that an allegation of simply being transported without a seatbelt does not, in and of itself, give rise to a constitutional claim. However, if the claim is combined with allegations that the driver was driving recklessly, this combination of factors may violate the Eighth Amendment").

Also instructive is the decision in *Servin v. Anderson*, No. 3:11-cv-539, 2012 WL 171330 (D. Conn. Jan. 20, 2012). In *Servin*, the plaintiff was killed as a result of a police officer who drove his vehicle into the passenger side of a car. *See Servin*, 2012 WL 171330, at *1-*5. The plaintiff alleged that the defendants routinely drove recklessly in non-emergency situations, and

that they were traveling in excess of the speed limit at the time of the accident. *See id.* Denying the motion to dismiss, the district court found instructive the Second Circuit's decision in *Pena v. Deprisco*, 432 F.3d 98, 114 (2d Cir. 2012), in which the court found that the plaintiff had satisfied the deliberate indifference standard where police officers failed to prevent – and in fact encouraged and condoned – a colleague's off-duty drinking and driving. Specifically, the district court held as follows:

> And if an off-duty police officer's drinking and driving could satisfy the deliberate indifference standard, so to[o] could the speeding of on an on-duty police officer merely returning to the police station. In both situations, there appears to have been ample time for reflection, the defendants knew of the potential generalized risks associated with speeding through red lights without lights or sirens, and although potential victims were unknown, the officers nonetheless "deliberately assumed or acquiesced in such risk."

*Servin*, 2012 WL 171330, at *5.

In the present matter, Plaintiff has presented sufficient evidence to create issues of fact precluding summary judgment. Although Defendants contend that Plaintiff could have put the seatbelt on himself if he so desired, Plaintiff denies this contention. In fact, Ramon Valentin testified that, during the relevant time, detainees were restrictively confined in handcuffs and ankle shackles, with chains that are fed through a "black box" that severely limits movement. *See* Dkt. No. 56-4 at 30. Further, Mr. Valentin testified that he could not have placed himself into a seatbelt without assistance from one of the officers. *See id.* at 88.

Further, Plaintiff has alleged that Defendant Carter was driving the vehicle at an unsafe rate of speed at the time of the accident, which allegation he has supported through eyewitness testimony. *See* Dkt. No. 58 at ¶ 4. Specifically, Mr. Valentin, who was seated in the first row of

the passenger compartment of the van, next to Plaintiff and directly behind Defendant Carter, testified as follows:

> A.   As we was coming from the court we was joking around with the Cos.  We was talking.  Everything was good.  We was driving.  As we got towards the jail the CO did a spin like this and Luis flew out the door.
>
> Q.   Okay.
>
> A.   Because when we turned we all went like this because he took a fast sharp turn.  So by us not expecting it we cannot hold on to nothing. . . .
>
> \* \* \* \* \*
>
> Q.   Did the Sheriff's Department van take the corner into the Sheriff's Department at an unsafe rate of speed?
>
> A.   Yes.
>
> \* \* \* \* \*
>
> Q.   You feel that as somebody who was riding in the van?
>
> A.   Yes.  Because I almost flew – everyone went sliding to the way he was turning because the way he took the turn.  And if you remember it was wet that day.  The roads was wet.
>
> \* \* \* \* \*
>
> Q.   But that is your testimony that he took the corner too sharply?
>
> A.   He did.  He went fast.

Dkt. No. 56-4 at 7, 53, 84.

Additionally, Mr. Valentin testified that neither Defendant Carter nor Defendant Daw locked the door to the van with the key, which would have prevented it from opening.  *See* Dkt. No. 56-4 at 55.  Further, Mr. Valentin testified that it was only possible to open the door with a

12

key if it was properly secured, which Defendant Carter failed to do. *See id.* at 22, 25. This testimony is supported by Plaintiff's expert witness, who has opined that the door was either improperly latched at the time of the accident, or had a defective latching mechanism. *See* Dkt. No. 57-2 at 2.[4]

Construing the disputed facts in Plaintiff's favor as the non-moving party, the Court finds that Defendants' motion for summary judgment must be denied. Unlike the plaintiff in *Jabbar*, Plaintiff has alleged and put forth evidence of more than simply failing to provide him with a seatbelt. Plaintiff has alleged and offered evidence that the door was improperly latched and that Defendant Carter was operating the van in a reckless manner, knowing that the inmates were not restrained with seatbelts. Finally, Plaintiff has alleged and put forth evidence that Defendants were aware of an earlier incident in which an inmate was injured during a motor vehicle accident and the inmate was not wearing a seatbelt. *See* Dkt. No. 57-9 at 1. As such, the Court finds that this case is distinguishable from *Jabbar* in which the plaintiff merely alleged that his rights were violated when he was transported without being restrained by a seatbelt. Rather, similar to the plaintiff in *Brown*, Plaintiff has put forth evidence of the additional conduct discussed above, with evidence demonstrating that Defendants were aware that recklessly driving the transport van while not restraining inmates with seatbelts created a substantial risk of harm. *See* Dkt. No. 56-7 at 19; Dkt. No. 56-6 at 100; *see also Brown*, 518 F.3d at 560 (holding that evidence of the defendant's refusal to secure the plaintiff's seatbelt combined with the defendant's reckless driving

---

[4] According to Plaintiff and Plaintiff's expert, despite requests that Defendants preserve all evidence relating to this incident, Defendants' modified the door handles on the transport van before Plaintiff or his expert was able to inspect the vehicle. *See* Dkt. No. 57-2 at 6; Dkt. No. 58 at ¶ 12.

was sufficient for a jury to "conclude that there was a substantial risk of harm to [the plaintiff] and that [the defendant] knew of and disregarded the substantial risk [of] harm").

Based on the foregoing, the Court denies this portion of Defendants' motion for summary judgment.

## C.     Personal involvement and municipal liability

Defendants contend that the claims against Defendants County of Montgomery, Amato, Smith and Franco must be dismissed because Plaintiff has failed to establish that they were personally involved in the alleged unconstitutional conduct. *See* Dkt. No. 47 at 13-15.

"'Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  A "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Traditionally, supervisory personnel may be considered "personally involved" if a plaintiff demonstrates that the defendant:

> (1) participated directly in the alleged constitutional violation;
>
> (2) failed to remedy the wrong after being informed of it;
>
> (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or,

(5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating there were ongoing unconstitutional acts.

*Colon v. Coughlin*, 58 F.3d 865. 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)).[5]

"[A] municipality [or municipal entity] can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality [or municipal entity]." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citation omitted). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Id.* (citation omitted); *see also Connick v. Thompson*, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011). To prevail on a section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and

---

[5] Some courts have questioned the vitality of these factors given the heightened pleading standards imposed by the Supreme Court in *Iqbal*. *See Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801(SAS), 2009 WL 1835939, *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster — a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred"), *aff'd* 387 Fed. Appx. 55 (2d Cir. 2010); *Newton v. City of New York*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived" post- *Iqbal*). Other courts, however, have held that "even after the U.S. Supreme Court's decision in *Iqbal*, these 'categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated.'" *Hernandez v. Goord*, No. 01 Civ. 9585(SHS), 2013 WL 2355448, *7 (S.D.N.Y. May 29, 2013) (quoting *Qasem v. Toro*, 737 F. Supp. 2d 147, 152 (S.D.N.Y. 2010)); *see also Ramey v. Perez*, No. 13 Civ. 00017(CM), 2014 WL 407097, *4 (S.D.N.Y. Jan. 31, 2014) ("*Colon* remains the standard in this Circuit for deciding whether personal involvement by supervisory officials is sufficiently alleged in the context of the Eighth Amendment"). The Second Circuit has yet to rule on the question. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but declining to reach the issue).

(5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (citation omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359.

In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions-either expressly or tacitly." *Jones*, 691 F.3d at 81 (citation omitted). "Thus, a plaintiff can prevail against a municipality [or municipal entity] by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." *Id.* (citation omitted). To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quotations and citation omitted). "[D]eliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." *Id.*; *see also Cash*, 654 F.3d at 334.

In the present matter, the Court finds that Plaintiff has created issues of fact regarding Defendants Amato, Smith, and Franco's personal involvement in the alleged conduct. Contrary to Defendants' assertions, there is evidence that these Defendants were aware that the locks on the transport van had not been disabled due to an oversight during the initial inspection by the receiving officer. *See* Dkt. No. 57-10 at 1. In fact, in Defendant Daw's letter in response to the

letter of reprimand he was issued, he states that "multiple requests made verbally to the jail administrator about getting the locks fixed went unanswered. This resulted in the locks never being disabled[.]" *Id.* Further, as discussed above, in the letter of reprimand issued to Defendant Daw, Defendant Amato acknowledged that in June of 2009, an inmate was injured in a motor vehicle accident in which the inmate was not wearing a seatbelt. *See* Dkt. No. 57-9 at 1. Although Defendants assert that it was the Sheriff Department's policy to always secure inmates with a seatbelt during transport, the testimony makes clear that the policy was not routinely followed, if even followed at all. Further, the record is devoid of any evidence that these Defendants took any steps to ensure that this "policy" was being followed, even after the June 2009 incident. *See* Dkt. No. 56-9 at 53-54, 76; Dkt. No. 56-7 at 58. In fact, Defendant Smith acknowledged that he does not even occasionally make "spot checks" to ensure that the seatbelt policy was being followed. *See* Dkt. No. 56-9 at 76.

Finally, as Defendant Daw pointed out in his response to the letter of reprimand, there appears to have been two different policies in place at the relevant time regarding inmate transportation procedures. *See* Dkt. No. 57-10 at 2-6. The letter of reprimand stated, without citation to the relevant provision, that it is the Department's policy to secure all inmates with a seatbelt prior to transport. *See* Dkt. No. 57-9 at 1. In Defendant Daw's response to the reprimand, however, he provided a copy of policy number CD-07-05-00, which provides as follows: "All inmates being transported will be handcuffed and shackled with a restraint belt, except when medically or physically impaired." Dkt. No. 57-10 at 2. The policy does not, however, provided that inmates being transported shall be secured with a seatbelt. *See id.* at 2-6.

Based on the foregoing, the Court finds that Defendants' motion for summary judgment must be denied as to Plaintiff's claims against Defendants Amato, Smith, Franco, and County of Montgomery.

## D.      Qualified immunity

Defendants contend that they are entitled to qualified immunity because "the proof in this case, and considered in light of the law as it stood in 2010 when this accident happened, was not sufficiently clear.  As a consequence it cannot be said that any of the individuals violated a clearly established Eighth Amendment or Fourteenth Amendment right when the plaintiff was not placed in a seatbelt."  Dkt. No. 74 at 15.

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit").  "[T]he salient question [in determining qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that the "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)).

The qualified immunity determination consists of two steps, which a court may consider in either order.  *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation omitted).

The first step is to determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009) (citations omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted).

A right is "clearly established" if "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "To determine whether a right is clearly established, we look to: (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (citing *Schecter v. Comptroller of City of N.Y.*, 79 F.3d 265, 271 (2d Cir. 1996)). "Courts 'do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Walker v. Schult*, 717 F.3d 119, 125-26 (2d Cir. 2013) (quoting *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083 (2011)). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts."

*Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

Although Defendants are correct that there were no published decisions from the Second Circuit addressing this factual situation and, therefore, the law was not "clearly established," the absence of case law directly on point is not dispositive. In *Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008), the Eighth Circuit addressed this specific issue. In *Brown*, the court determined that the right to not be driven recklessly without a seatbelt was clearly established because corrections employees had "fair warning" although there were no published cases in that circuit "directly addressing deliberate indifference in the context of prisoner transportation." *Id.* at 561. The Eighth Circuit did have a case with very similar facts that was unpublished. However, the court reasoned that "even discounting [the case's] significance because it was unpublished, 'officials can still be on notice that their conduct violated established law even in novel factual circumstances.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). The court explained that there were other cases addressing deliberate indifference to the safety of prisoners which made the right clearly established. *See id.* at 561–62.

Similar to the Eighth Circuit's reasoning, Defendants had "fair warning" that failing to seatbelt an inmate combined with driving recklessly would be deliberate indifference to a substantial risk of harm. This is particularly true considering the June 2009 incident in which another inmate, who was not secured with a seatbelt, was injured in a motor vehicle accident. The law describing deliberate indifference was clear in the Second Circuit on October 13, 2010. Deliberate indifference requires knowingly subjecting an inmate to a sufficiently serious risk of harm. *See Farmer*, 511 U.S. at 834. Accordingly, it was clearly established that prison employees could not subject an inmate to a substantial risk of serious harm.

Based on the foregoing, the Court finds that Defendants are not entitled to qualified immunity at this stage; and, therefore, Defendants' motion for summary judgment is denied.

## E.    State-law claims

The only argument Defendants have raised regarding Plaintiff's state-law claims is that the Court should decline to exercise supplemental jurisdiction over these claims upon dismissal of the federal claims.

Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted). Since the Court has dismissed all of Plaintiffs' federal claims, it declines to exercise supplemental jurisdiction over their state-law claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

Since the Court has denied Defendants' motion for summary judgment as to Plaintiff's federal claims, the Court will exercise supplemental jurisdiction over Plaintiff's state-law claims.[6]

## IV. CONCLUSION

---

[6] Even if the Court had granted Defendants' motion for summary judgment as to Plaintiff's federal claims, the Court would have still exercised supplemental jurisdiction over Plaintiff's state-law claims due to the length of time this matter has been pending before the Court, the proximity to trial, and the extensive discovery and motion practice in which the parties have engaged. *See Vysovsky v. Glassman*, No. 01 Civ. 2531, 2007 WL 3130562, *5-*6 (S.D.N.Y. Oct. 23, 2007).

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  May 16, 2014
        Albany, New York

Mae A. D'Agostino
U.S. District Judge